HOGAN LOVELLS US LLP
Stephen A. Loney, Jr. (NJ No. 005172006)
stephen.loney@hoganlovells.com
Jessica K. Jacobs (NJ No. 038002011)
jessica.jacobs@hoganlovells.com
Jason M. Russell (NJ No. 294212019)
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Tel: (267) 675-4600
Fax: (267) 675-4601

*Attorneys for Defendants Bank of Baroda,*
*Bank of India, and State Bank of India*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FORMATION TEXTILES LLC,<br><br>              Plaintiff,<br><br>v.<br><br>ERNST & YOUNG LLP, EY RESTRUCTURING LLP, BANK OF BARODA, BANK OF INDIA, STATE BANK OF INDIA, and GB GLOBAL LIMITED, formerly known as MANDHANA INDUSTRIES LIMITED,<br><br>              Defendants. | Case No. 2:20-cv-01811-ES-CLW<br><br>*Document Electronically Filed*<br><br>Motion Day:  December 21, 2020<br><u>Oral Argument Requested</u> |

## DEFENDANTS BANK OF BARODA, BANK OF INDIA, AND
## STATE BANK OF INDIA'S MEMORANDUM OF LAW IN SUPPORT
## <u>OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT</u>

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................... 1

STATEMENT OF FACTS ............................................................................ 3

    I.      Overview of Allegations Against the Banks and Mandhana ............... 3

    II.     Proceedings in India ................................................................. 7

         A.     Overview of the Indian Insolvency and Bankruptcy Proceedings ................................................................................ 7

         B.     The Pending NCLT Proceedings ............................................. 12

    III.    Factual Background Relating to Personal Jurisdiction ...................... 15

ARGUMENT ......................................................................................... 17

    I.      Legal Standards ................................................................... 17

    II.     The Amended Complaint Must Be Dismissed Under Rule 12(b)(2) for Lack of Personal Jurisdiction. ............................... 19

         A.     This Court Does Not Have General Jurisdiction Over Defendants. ........................................................................ 20

         B.     This Court Does Not Have Specific Jurisdiction Over Defendants. ........................................................................ 21

              1.     Defendants lack sufficient minimum contacts with New Jersey. ....................................................................... 22

              2.     Formation's claims are not related to any activity in the forum. ........................................................................ 24

              3.     Plaintiff's allegations fail the Calder effects test because they cannot establish that Defendants "expressly aimed" any tortious conduct at New Jersey. .............................. 26

              4.     Without any sufficient minimum contacts, this Court's exercise of jurisdiction would not comport with Due Process. ....................................................................... 28

    III.    The Amended Complaint Must Be Dismissed Under Rule 12(b)(3) for Improper Venue. ................................................................... 29

i

IV.    The Amended Complaint Should Be Dismissed on Forum Non
       Conveniens Grounds. ..........................................................................32

V.     Alternatively, this Court Should Defer to the Pending Indian
       Proceedings Under the Principle of International Comity..................36

CONCLUSION...........................................................................................39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al-Ghena Int'l Corp. v. Radwan*,
  957 F. Supp. 2d 511 (D.N.J. 2013) .............................................................30, 31

*Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal.*,
  480 U.S. 102 (1987).................................................................................................28

*Barrett v. Catacombs Press*,
  44 F. Supp. 2d 717 (E.D. Pa. 1999) ............................................................22, 24

*BNSF Ry. Co. v. Tyrrell*,
  137 S. Ct. 1549 (2017)..........................................................................................20

*Bockman v. First Am. Mktg. Corp.*,
  459 F. App'x 157 (3d Cir. 2012) ......................................................................29

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
  137 S. Ct. 1773 (2017)..................................................................................24, 25

*Calder v. Jones*,
  465 U.S. 783 (1984).......................................................................................*passim*

*Carteret Sav. Bank, FA v. Shushan*,
  954 F.2d 141 (3d Cir. 1992) .......................................................................24, 25

*Charles Gendler & Co., Inc. v. Telecom Equip. Corp.*,
  102 N.J. 460 (1986) ...............................................................................................19

*Cornfeld v. Invs. Overseas Servs. Ltd.*,
  471 F. Supp. 1255 (E.D.N.Y. 1979) ..................................................................36

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)................................................................................................20

*E. Concrete Materials, Inc. v. Jamer Materials Ltd.*,
  No. 19-9032, 2019 WL 6734511 (D.N.J. Oct. 25, 2019)....................................7

iii

*Flagship Interval Owner's Ass'n, Inc. v. Phila. Furniture Mfg. Co.*,
No. 09-1173, 2010 WL 1135736 (D.N.J. Mar. 22, 2010) ...................................19

*Frutta Bowls Franchising LLC v. Bitner*,
No. 18-2446 (FLW), 2018 WL 6499760 (D.N.J. Dec. 10, 2018) .....................21

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)..........................................................................................20, 24

*Hegrenes v. Nilsen*,
No. 16-2271, 2016 WL 3457219 (D.N.J. June 24, 2016) ..................................32

*HS Real Co., LLC v. Sher*,
526 F. App'x 203 (3d Cir. 2013) .......................................................................24

*IMO Indus., Inc. v. Kiekert AG*,
155 F.3d 254 (3d Cir. 1998) ..................................................................21, 26, 27

*Int'l Shoe Co. v. Wash.*,
326 U.S. 310 (1945)............................................................................................19

*Kultur Int'l Films Ltd. v. Covent Garden Pioneer, FSP., Ltd.*,
860 F. Supp. 1055 (D.N.J. 1994) .......................................................................33

*Loeb v. Bank of Am.*,
254 F. Supp. 2d 581 (E.D. Pa. 2003) .................................................................31

*Marten v. Godwin*,
499 F.3d 290 (3d Cir. 2007) ..............................................................................26

*Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*,
960 F.2d 1217 (3d Cir.1992) .............................................................................17

*Micklos v. Certify Global, Inc.*,
No. 3:18-cv-14781, 2019 WL 2265343 (D.N.J. May 28, 2019)............33, 34, 35

*Miller Yacht Sales, Inc. v. Smith*,
384 F.3d 93 (3d Cir. 2004) ................................................................................19

*Mitchell v. GPM Invs., LLC*,
No. 14-683, 2015 WL 585972 (D.N.J. Feb. 11, 2015)......................................17

*Musleh v. Broad Realty Invs., L.P.*,
  No. 16-912, 2017 WL 1485472 (D.N.J. Apr. 21, 2017) ....................................17

*O'Connor v. Sandy Lane Hotel Co.*,
  496 F.3d 312 (3d Cir. 2007) ...................................................................*passim*

*Paraschos v. YBM Magnex Int'l, Inc.*,
  130 F. Supp. 2d 642 (E.D. Pa. 2000)..........................................................36, 38

*Phila. Gear Corp. v. Phila. Gear de Mexico, S.A.*,
  44 F.3d 187 (3d Cir. 1994) .......................................................................18, 36

*Pinker v. Roche Holdings, Ltd.*,
  292 F.3d 361 (3d Cir. 2002) ...........................................................................17

*Theorem, Inc. v. Citrusbyte, LLC*,
  No. 19-13423, 2019 WL 3812474 (D.N.J. Aug. 14, 2019)..............................26

*Time Share Vacation Club v. Atl. Resorts, Ltd.*,
  735 F.2d 61 (3d Cir. 1984) ..............................................................................7

*Toys "R" Us, Inc. v. Step Two, S.A.*,
  318 F.3d 446 (3d Cir. 2003) ...........................................................178, 22, 23

*Windt v. Qwest Commc'ns Int'l, Inc.*,
  529 F.3d 183 (3d Cir. 2008) ...........................................................................18

**Statutes**

28 U.S.C. § 1391(b)(2)....................................................................................29

28 U.S.C. § 1391(b)(3)....................................................................................29

Insolvency & Bankruptcy Code § 6................................................................*passim*

**Rules**

Fed. Rule Civ. Proc. § 4(e) .............................................................................19

Fed. Rule Civ. Proc. §12(b) ...........................................................................*passim*

N.J. Court Rule 4:4-4 .....................................................................................19

**Other Authorities**

Insolvency & Bankruptcy Code
  https://www.indiacode.nic.in/handle/123456789/2154?sam_handle
  =123456789/1362 ................................................................................7

Defendants Bank of Baroda, Bank of India, and State Bank of India (collectively, the "Banks" or "Bank Defendants"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in support of their Motion to Dismiss the Amended Complaint filed by Plaintiff Formation Textiles LLC ("Formation" or "Plaintiff").

## PRELIMINARY STATEMENT

The case simply does not belong in the District of New Jersey.  It concerns a dispute over the acquisition of Mandhana Industries Limited ("Mandhana"), a company undergoing the corporate insolvency resolution process ("CIRP") in the Republic of India pursuant to the (Indian) Insolvency and Bankruptcy Code, 2016 (the "Code").  The Bank Defendants, all located in India, are three of the 15 total banks and financial institutions comprising the Committee of Creditors ("COC") of Mandhana, a textile and apparel manufacturing company incorporated and having its registered office in India, which Plaintiff agreed to acquire through the CIRP. The same dispute involving this acquisition is already pending adjudication before the Mumbai bench of India's National Company Law Tribunal ("NCLT").  The proceedings pending before the NCLT involve the same parties and are at an advanced stage, with the next hearing scheduled for December 9, 2020.

Unhappy with its decision to acquire Mandhana, Plaintiff is pursuing parallel claims in multiple jurisdictions around the world to undo its arm's length deal.

1

Here, Plaintiff makes the same misguided factual allegations that it is pressing before the NCLT in an attempt to bring duplicative claims under New Jersey law for fraud, negligent misrepresentation, and civil conspiracy to commit fraud against three Indian-based banks.  But neither the Banks nor Mandhana have offices, property, or operations in the State of New Jersey.  And Formation does not and cannot allege facts that show any of the Defendants have sufficient minimum contacts with New Jersey such that this Court could exercise personal jurisdiction over the Defendants.  Accordingly, this action should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(2).

Moreover, even if this Court had personal jurisdiction over Defendants, the Amended Complaint should be dismissed for three additional reasons.  First, venue is improper in the District of New Jersey.  Even accepting Formation's allegations as true, the lion's share of the alleged events and omissions giving rise to its claims occurred in the Republic of India—not in New Jersey.  Second, under the doctrine of *forum non conveniens*, this Court should dismiss Plaintiff's Amended Complaint because an adequate alternative forum exists that could entertain—and indeed *is* entertaining—this matter:  the NCLT.  Plaintiff has already filed an application

with the NCLT (*see* Sinha Certif., Ex. A)[1] as part of that court's jurisdiction over Mandhana's insolvency proceedings, raising the same issues on the same set of facts against the same parties seeking the same relief.  Lastly, and relatedly, this Court should defer to the pending insolvency proceedings before the NCLT under the principle of international comity and decline to exercise jurisdiction over this matter.  The interests of India and its court system, the procedures and laws the country has in place to handle an insolvent Indian corporation, and the interests of its creditors, including, *inter alia*, the Defendant Banks, all outweigh any interest that the United States would have in adjudicating this matter.  This Court should decline to entertain Plaintiff's wasteful forum shopping.

## STATEMENT OF FACTS[2]

### I.    Overview of Allegations Against the Banks and Mandhana

Mandhana is a textile and apparel manufacturer located in Mumbai.  Am. Compl. ¶ 25.  The Bank Defendants were among Mandhana's largest secured creditors and part of the COC of Mandhana, having funded Mandhana's expansion between 2011 and 2015 through certain loan facilities.  *Id.* ¶¶ 31-32.  Between

---

[1] "Sinha Certif." refers to the Certification of Prahlad Kumar Sinha in Support of the Bank Defendants' Motion to Dismiss the Amended Complaint, submitted herewith.

[2] For the purposes of this Motion under Fed. R. Civ. P. 12(b)(2) and 12(b)(3), this Statement of Facts assumes the truth of any well-pleaded factual assertions. Should Plaintiff's claims survive this Motion, Defendants intend to dispute Plaintiff's baseless and unsupportable allegations.

2015 and 2017, Mandhana experienced liquidity problems and was unable to service its loan commitments to the Banks.  *Id.* ¶ 33.  According to Plaintiff, Defendant Bank of Baroda was Mandhana's largest creditor and, in September 2017, Bank of Baroda brought Mandhana into an involuntary restructuring.  *Id.* ¶ 34.  Mandhana's largest creditors, including Bank of India and State Bank of India, then formed a Committee of Creditors to oversee the company's operations and which "was empowered to seek Mandhana's reorganization, liquidation, or sale to a third party."  *Id.* ¶ 35.

Plaintiff alleges that the Banks and additional Defendants Ernst & Young LLP and EY Restructuring LLP (collectively, "EY") discovered at or around this time that "Mandhana's former executives had carried out a stunning multi-year fraud and money-laundering scheme and that its financial statements were riddled with fraud."  *Id.* ¶ 1.  Plaintiff contends that, after the Banks and EY learned of Mandhana's alleged fraudulent conduct, they commissioned a forensic audit of the Indian-based company, which showed that "Mandhana had artificially inflated sales, trade receivables, and assets through fictitious transactions with shell companies, all while its former executives expropriated cash through circular trading with and money laundering to undisclosed related parties."  *Id.* ¶ 2.  It also alleges that Defendants knew that the company owed "millions in unpaid taxes" to

the Indian government, which "directly contradicted company records showing that the same authorities owed Mandhana substantial tax refunds." *Id.* ¶ 3.

Plaintiff then makes the fantastical claim that, shortly after commissioning the forensic audit, the Banks and EY "hatched a plan to pass the loss onto an unsuspecting buyer"—namely, Formation—by presenting Mandhana as a "good investment" even though they allegedly knew it was "riddled with fraud and unpaid tax liabilities." *Id.* ¶ 4.  Formation maintains that the Banks and EY "conspired to give Formation's diligence team working in New Jersey thousands of pages of Mandhana's false financial information" while hiding the results of the forensic audit from Formation. *Id.* ¶ 5.  Formation also alleges that "Mandhana hid its unpaid tax liabilities, which were disclosed only to EY and the Banks" and that the Banks and EY "told Formation in a series of telephone calls and videoconferences that Mandhana was one of the best turnaround opportunities on the market." *Id.* ¶ 6.

On July 6, 2018, after performing a due diligence review and being advised by BDO India LLP (a reputed consulting firm) and L&L Partners (a reputed Indian law firm) regarding its resolution plan submission for Mandhana, Formation offered to purchase a controlling stake in Mandhana, and the Banks accepted. *Id.* ¶¶ 7, 64.  Formation now alleges that, shortly after assuming control of Mandhana, it discovered the forensic audit report and learned of the tax notices from the

Indian government. *Id.* ¶¶ 8, 88-89. Formation then attempted to disclaim the purchase and sale agreement and to return Mandhana to the control of the Banks and EY. *Id.* ¶ 9.

Plaintiff neglects to mention in its Amended Complaint, however, that Formation and Formation alone proposed and pursued its plan to purchase Mandhana (*see* Sinha Certif., Ex. I), and it only attempted to scuttle that plan *after* the NCLT entered the final Resolution Plan proposed *by Formation* on November 30, 2018 (*see id.*, Ex. C), *after* Formation had taken over control and management of Mandhana in January 2019 pursuant to its own plan (*see* Am. Compl. ¶¶ 8, 88-89), and *after* Formation had arranged to place its chosen personnel into key management positions within Mandhana (*id.*). In Formation's attempt to renege on its obligations under its Resolution Plan and the operative purchase and sale agreement—and to avoid paying an amount totaling about INR 4.44 billion (approximately USD $59 million) which Formation still owed under the Resolution Plan—Plaintiff filed an application with the NCLT on June 13, 2019. *See* Sinha Certif., Ex. A. With that application, Plaintiff sought an order that would effectively relieve Formation of its current obligations under the Resolution Plan and allow it to either revise its agreed-upon bid price to a lower valuation or, in the alternative, nullify the order of the NCLT approving the acquisition of Mandhana by Formation. *Id.* That application, which raises all of the same

6

allegations set forth in the Amended Complaint here, is currently being litigated before the NCLT.

## II. Proceedings in India

Formation's Amended Complaint is largely silent as to the ongoing legal proceedings in India. Yet the NCLT has been adjudicating the Mandhana restructuring and all disputes arising therefrom since September 2017, when Defendant Bank of Baroda filed its petition bringing Mandhana into involuntary restructuring under Section 7 of the Code. Sinha Certif., Ex. A, ¶ 6.1; *see also* Insolvency & Bankruptcy Code, 2016 ("Code"), §§ 6-7.[3] A brief overview of that litigation is necessary to provide the appropriate context to the venue, *forum non conveniens* and international comity issues raised by the Amended Complaint.[4]

### A. Overview of the Indian Insolvency and Bankruptcy Proceedings

Corporate insolvency resolution process under the Code can be initiated by a financial creditor (such as a bank) against a company for default. Code § 6. In the case of Mandhana, CIRP had been initiated by the NCLT upon an application

---

[3] The referenced Code provisions are available at https://www.indiacode.nic.in/handle/123456789/2154?sam_handle=123456789/1362.

[4] "As a Rule 12(b)(2) motion 'is inherently a matter which requires resolution of factual issues outside the pleadings,' the court may consider sworn affidavits or other documents in its jurisdictional analysis." *E. Concrete Materials, Inc. v. Jamer Materials Ltd.*, No. 19-9032, 2019 WL 6734511, at *2 (D.N.J. Oct. 25, 2019) (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984)).

made by Bank of Baroda.  *See* Am. Compl. ¶ 34.  Typically, upon admission by the NCLT, an insolvency professional is appointed as an interim resolution professional ("IRP"), whose duties include protecting and preserving the value of the property of the corporate debtor, and managing the operations of the corporate debtor as a going concern.  Code §§ 17-18.  From the date of appointment of the IRP, the powers of management of the affairs of the corporate debtor vest in the IRP.  *Id*.

The IRP collates all claims against the corporate debtor and forms the COC comprised of independent financial creditors.  *Id.* § 18.  In its first meeting, the COC votes on the appointment of a permanent resolution professional ("RP") for the corporate debtor.  *Id.* § 22.  In the case of Mandhana, Ms. Charu Desai was appointed as the IRP and then confirmed as the RP.  *See* Sinha Certif., Ex. C ¶ 2.

The RP published an invitation for submission of Expressions of Interest ("EOI") pursuant to Section 130 of the Code, inviting potential resolution applicants to submit resolution plans.  Here, the RP "issued newspaper advertisements inviting Expressions of Interest from prospective resolution applicants . . . for submission of resolution plans for [Mandhana]."  Sinha Certif., Ex. A ¶ 6.3.  It did so pursuant to the terms of the formal "Process Memorandum" issued by the RP on March 6, 2018.  Sinha Certif., Ex. D.  This memorandum set forth a detailed Request for Resolution Plan with specific terms and conditions,

timelines for submission, and guidelines for negotiation and finalization of a resolution plan to be submitted by prospective resolution applicants on an "*as is where is*" basis.  *See id.* ¶ 2.2.3.  It specifically provided, *inter alia,* that: (i) the Resolution Applicant must make its own independent appraisal of the Corporate Debtor and accept the risk of inadequacy, error, or mistake in the information provided in the Process Memorandum, Data Room, Information Memorandum, or any other information furnished by or on behalf of the Resolution Professional (*id.* ¶ 3.2(a)); (ii) implementation of the Resolution Plan will be on an "as is where is" basis (*id.* ¶ 3.2(e)); (iii) none of the RP, the members of the COC, or their respective advisors are providing any representations or warranty(ies) regarding the status of business, business prospects, or assets of the Corporate Debtor, and neither the RP nor the COC or their respective advisors assume any liability whatsoever in this respect (*id.* ¶ 3.2(f)); and (iv) the RP shall submit the Resolution Plan in accordance with the provisions of the Code and the CIRP Regulations and pay consideration in accordance with the terms and conditions set out in the successful Resolution Plan (*id.* ¶ 3.2(i)).

The Process Memorandum also required applicants to agree to resolve any disputes in the Indian courts.  *See* Sinha Certif., Ex. D ¶ 19 It specifically states: "This Process Memorandum, the Plan Process and the other documents pursuant to the Process Memorandum ***shall be governed by the laws of India and any dispute***

***arising out of or in relation to the Process Memorandum or the Plan Process
shall be subject to the exclusive jurisdiction of the Adjudicating Authority, courts
and tribunals at Mumbai, India***." *Id.* (emphasis added).

Prior to the July 6, 2018 offer to purchase alleged by Plaintiff (Am. Compl.
¶ 64), Formation submitted its EOI on May 23, 2018, and in good faith, the RP
provided Formation with access to the virtual data room on May 30, 2018.  *See*
Sinha Certif., Ex. A ¶¶ 6.3, 6.5.  At no point prior to submitting its EOI did
Plaintiff contact the RP or attempt to discuss the details of the Process
Memorandum.  But the virtual data room provided Plaintiff access to extensive
information on Mandhana including, *inter alia*, details on its assets and liabilities,
its financial statements, and claims submitted by creditors.  Am. Compl. ¶ 44.

Plaintiff's representatives conducted a due diligence of Mandhana and
submitted their proposed Resolution Plan to the RP on June 8, 2018.  *See id.* ¶ 42;
Sinha Certif., Ex. A ¶ 6.9.  Two other Indian companies—Finquest Financial
Services Limited ("Finquest") and GBTL Limited—also submitted resolution
plans for Mandhana.[5]  *See* Sinha Certif., ¶ 4.  Per the Code's requirements, the RP
examined the competing proposed resolution plans and presented them to the

---

[5]  Both Finquest and GBTL are Mumbai-based Indian corporations.  *See* Sinha
Certif., ¶ 4.  Notably, Formation was the only New Jersey-based corporation to
submit a plan to the RP.

COC. *Id.* ¶ 5.  On  June 14, 2018, the COC evaluated the proposed resolution plans and declared Finquest as the lead bidder. *Id.* ¶ 6.

Plaintiff, though, continued to pursue Mandhana.  First, Plaintiff unilaterally emailed a "revised bid" on June 20, 2018 to the RP. *Id.* ¶ 7.  Then, in meetings of the COC held between June 25, 2018 and June 28, 2018, the COC agreed on a revised bidding process between Formation and Finquest. *See* Sinha Certif., Ex. C ¶ 6.  Then, Formation and Finquest both submitted revised bids, but at its June 27, 2018 meeting, the COC once again declared Finquest as the lead bidder. *Id.*

Still, Plaintiff persisted, filing an application before NCLT challenging the declaration of Finquest as the highest bidder and seeking an opportunity to revise its bid upwards yet again. *Id.*  NCLT allowed the application on July 3, 2018. *Id.* Accordingly, an outbidding process was conducted between Formation and Finquest during the COC's July 4, 2018 meeting.  Sinha Certif., Ex. A, ¶ 6.10. Formation was finally declared the lead bidder. *Id.* ¶ 6.11.  Plaintiff then submitted its proposed Resolution Plan to the RP, and on July 6-7, 2018, the COC voted on and approved Plaintiff's Resolution Plan. *Id.*  The NCLT then entered an order approving Plaintiff's Resolution Plan to purchase Mandhana on November 30, 2018.  Sinha Certif., Ex. C ¶ 21.

The RP also accepted Formation's offer in a Letter of Intent stating that Formation was "identified as the highest bidder based on the evaluation criteria

provided in the Process Memorandum." Sinha Certif., Ex. E at 1. Formation's Managing Principal signed the Letter of Intent, by which Formation "Accepted Unconditionally" its terms. *Id.* at 4. Among those terms was an express requirement that its terms "***shall be governed by, and construed in accordance with laws of the Republic of India and NCLT, Mumbai Bench/courts in Mumbai shall have jurisdiction over all disputes arising out, pursuant to or in connection with the Letter of Intent***." *Id.* (emphasis added)

## B. The Pending NCLT Proceedings

In accordance with the above choice of venue provisions, Plaintiff has already asserted the same unsubstantiated and frivolous allegations in the NCLT proceedings—claiming nondisclosure and/or suppression of certain information— as it alleges here. Plaintiff alleges that it learned of the purportedly suppressed information for the first time only after taking over the management and control of Mandhana (*see* Am. Compl. ¶ 87), but Plaintiff was surely aware that a transaction audit of Mandhana had been conducted and a report submitted pursuant to the requirements of the Code. Nevertheless, Plaintiff began a campaign to undo its own Resolution Plan, including threats to unilaterally reduce its already accepted financial offer, and a demand on October 28, 2018, that the RP return its Earnest Money payment. *See*, *e.g.*, Sinha Certif., Ex. A ¶ 6.13. Even after the NCLT entered an order approving the final Resolution Plan proposed by Formation,

12

Plaintiff continued to squabble with the RP over its desire to obtain control over Mandhana without making the upfront consideration payments required by the Formation Resolution Plan (totaling INR 2.26 billion, or approximately USD $30.4 million).  *Id.* ¶ 6.16.  Formation's Managing Principal "traveled from the United States of America to Mumbai, India" and made himself "available in India from December 9, 2018 until January 5, 2019 for the purpose of taking over management and control of [Mandhana]."  *Id.* ¶ 6.14.

Despite having paid only a fraction of the sums committed for payment by Formation under the Resolution Plan, Formation insisted on gaining control over Mandhana.  Plaintiff ultimately did assume control over Mandhana, contrary to the terms of its Resolution Plan, weeks later on January 31, 2019.  *See* Am. Compl. ¶ 66; *see also* Sinha Certif., Ex. A ¶ 6.21 (stating that the Resolution Professional "handed over the control and management" of Mandhana to Formation on January 31, 2019).   Once Formation had its key managerial people in place and commenced the day-to-day affairs of Mandhana, Formation claims that it became aware of the extent of Mandhana's allegedly undisclosed liabilities.  *Id.* ¶ 6.22; Am. Compl. ¶ 87.

On June 13, 2019, Formation filed its Miscellaneous Application ("MA") No. 2223/2019 with the NCLT.  Sinha Certif., Ex. A.  Like Plaintiff's Amended Complaint here, its MA ignored Plaintiff's own continual failures to perform under

the Formation Resolution Plan and the Letter of Intent, instead alleging that the COC and the Resolution Professionals "deliberately, fraudulently and willfully suppressed material facts and information from the Applicant including facts and information pertaining to . . . [the] true and correct financial position of [Mandhana.]" *Id.* ¶ 5.2.  Formation seeks an order from the NCLT "to modify the Resolution Plan" it submitted in light of "the deceitful and dishonest manner in which the COC and RP have conducted the CIRP," or, in the alternative, to nullify its order for approval of the Resolution Plan submitted by Formation.  *Id.* ¶ 5.7. Formation also asks the NCLT to order the RP and the COC "to refund the sum" it spent "towards implementation of the resolution plan."  Sinha Certif., Ex. B at 41.

The parties have been litigating Plaintiff's claims before the NCLT since mid-2019.  The tribunal heard argument from the parties and issued an interim order on December 5, 2019, to require, among other things, that control of Mandhana be turned over to the COC, who in turn, were directed to hand it over to the Resolution Professional, without prejudice to their rights and contentions under the miscellaneous applications filed.  *See generally* Sinha Certif., Ex. F.  However, NCLT's ultimate decision with respect to MA No. 2223/2019 is still pending, with

multiple hearings having been delayed due to the COVID-19 pandemic.[6]  As of the time of this Motion, the parties are scheduled for hearing before the NCLT on December 9, 2020.  Sinha Certif., ¶ 3(a).

## III.   Factual Background Relating to Personal Jurisdiction

Formation is a limited liability company organized under the laws of Delaware, with its headquarters and principal place of business in Paramus, New Jersey.  Am. Compl. ¶ 12.  By contrast, all of the Bank Defendants are Indian public sector banks established under the laws of India, whose majority shareholding is owned by the Government of India.[7]  None of them has a New Jersey location.  Bank of Baroda is headquartered in Vadodara, India, and Bank of India and State Bank of India are both headquartered in Mumbai, India.[8]  Sinha Certif., ¶ 2.

Formation's only basis for alleging jurisdiction in this case is the sweeping allegation that the Defendants' alleged "tortious acts" were directed "toward the State of New Jersey," which caused Formation to suffer "tortious injury in the

---

[6]  MA No. 2223/2019 was listed on April 21, 2020 for a hearing before the NCLT, but due to the outbreak of COVID-19, all NCLT matters listed for hearing from March 24, 2020 to May 17, 2020 were adjourned.

[7]  Mandhana is also incorporated under the laws of India, with its principal place of business in Mumbai, India.  And while Mandhana maintains an international office in New York City, it has no office, place of business, bank account, or mailing address in New Jersey.  *See* Sinha Certif., ¶ 2(d).

[8]  Each of the three Banks maintains a branch office in New York City; Bank of India also maintains a branch office in San Francisco, and State Bank of India has offices in Chicago and Los Angeles.  *See* Sinha Certif., ¶¶ 2(a)-2(c).

State of New Jersey." Am. Compl. ¶ 27. Notably, Plaintiffs make no allegations concerning any other contacts between the Banks or Mandhana and the United States because the underlying facts relate solely to alleged conduct in India.

According to Formation, an EY representative called Formation's offices in New Jersey to discuss Mandhana because he knew that Formation was a U.S. firm specializing in turnarounds that did not have any preexisting business in India. *Id.* ¶¶ 40-41. Shortly thereafter, a telephone conversation took place between Formation's Managing Principal, who happened to be in New Jersey at the time, and Mandhana's corporate secretary in India. *Id.* ¶¶ 42, 60. Formation alleges that the purpose of the call was "to conduct due diligence in advance of deciding whether to put together a bid to purchase Mandhana[.]" *Id.* ¶ 60. A few weeks later, representatives from EY, Bank of Baroda, and State Bank of India—all of whom were in India—also discussed Mandhana's financial standing during a phone conversation with Formation's Managing Principal. *Id.* ¶ 43.

Following those telephone conversations, Formation alleges that EY, at the behest of the Banks, "compiled a virtual data room comprising more than 1,000 documents" related to Mandhana's financial picture. *Id.* ¶ 44. Formation's diligence team in New Jersey was able to access the virtual data room to download the materials and begin its review of Mandhana's financial statements. *Id.* ¶¶ 45-46. About one week later, Formation's Managing Principal discussed the contents

16

of the virtual data room in a telephone call from his home office in New Jersey with an EY representative in India.  *Id.* ¶ 61.  Formation also alleges that while its team was conducting its ongoing due diligence, two videoconferences were held between Formation's Managing Principal in New Jersey and representatives from EY and each of the Banks in India.  *Id.* ¶ 62.

Formation does not allege that any representative from any of the three Banks or any representative from Mandhana ever traveled to New Jersey to meet with Formation while it was contemplating submitting a resolution plan to purchase Mandhana.

## **ARGUMENT**

### I.   **Legal Standards**

The standards governing Defendants' motion to dismiss on personal jurisdiction grounds are well established.  "[I]n deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff."  *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003) (citing *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)).  Failure to allege sufficient jurisdictional facts by itself warrants dismissal of the complaint.  *Musleh v. Broad Realty Invs., L.P.*, No. 16-912, 2017 WL 1485472, at *4 (D.N.J. Apr. 21, 2017); *Mitchell v. GPM Invs., LLC*, No. 14-683, 2015 WL 585972, at *3 (D.N.J. Feb. 11, 2015).  And

17

where the "defendant raises the defense of the court's lack of personal jurisdiction, the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper." *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992) (citation omitted).  To meet that burden, the plaintiff must present "a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Id.* (citation omitted).

The legal standards governing Defendants' additional grounds for dismissal—*forum non conveniens* and the principle of international comity—rest squarely within the Court's discretion.  *See*, *e.g.*, *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 188-89 (3d Cir. 2008) ("[T]he district court is accorded substantial flexibility in evaluating a *forum non conveniens* motion, and [e]ach case turns on its facts."); *Phila. Gear Corp. v. Phila. Gear de Mexico, S.A.*, 44 F.3d 187, 191 (3d Cir. 1994) ("[A] court may, within its discretion, deny comity to a foreign judicial act[.]").  Dismissal is appropriate when "an alternative forum has jurisdiction to hear the case, and when trial in the plaintiff's chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience." *Windt*, 529 F.3d at 189 (internal citation omitted).

## II.      The Amended Complaint Must Be Dismissed Under Rule 12(b)(2) for Lack of Personal Jurisdiction.

This Court does not have personal jurisdiction over any of the Banks. To determine whether personal jurisdiction exists over Defendants, the Court must ask whether the Banks have "'certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316-17 (3d Cir. 2007) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)); *see also Flagship Interval Owner's Ass'n, Inc. v. Phila. Furniture Mfg. Co.*, No. 09-1173, 2010 WL 1135736, at *3, 4 (D.N.J. Mar. 22, 2010) (the due process protection of the Fourteenth Amendment allows a federal court to exercise personal jurisdiction over a nonresident of the forum only when the defendant has sufficient minimum contacts with the forum and when subjecting the defendant to the court's jurisdiction would comport with traditional notions of fair play and substantial justice).[9] The Due Process Clause requires a showing of at least one of the following two types of personal jurisdiction as to each foreign defendant:

---

[9] New Jersey federal courts have jurisdiction over parties to the extent provided under New Jersey state law. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing Fed. R. Civ. P. 4(e)). "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Id.* (citing N.J. Court Rule 4:4-4(c)); *see also Charles Gendler & Co., Inc. v. Telecom Equip. Corp.*, 102 N.J. 460, 469 (1986) ("Rule 4:4-4, this state's equivalent of a 'long-arm statute,' permits service of process on non-resident defendants 'consistent with due process of law.'").

19

general or specific. *See O'Connor*, 496 F.3d at 317. Formation has not alleged, and cannot show, facts sufficient to satisfy either type of personal jurisdiction, and its Amended Complaint should be dismissed.

### A.    This Court Does Not Have General Jurisdiction Over Defendants.

General jurisdiction exists when a defendant's "affiliations with the State are 'so continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The 'paradigm' forums in which a corporate defendant is 'at home' . . . are the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (citing *Daimler*, 571 U.S. at 137; *Goodyear*, 564 U.S. at 924).

Here, there is no basis in the Amended Complaint to find that the Banks have "continuous and systematic" affiliations with the State of New Jersey such that they could be rendered at home in this forum. Nor could there be. All three Banks share the same place of incorporation—the Republic of India. And none of the Banks maintain a branch or satellite office or have any type of presence within New Jersey such that this forum could even remotely be considered a principal

place of business.[10]  Simply put, this Court cannot exercise general personal jurisdiction over the Banks.

### B.   This Court Does Not Have Specific Jurisdiction Over Defendants.

Plaintiff's allegations appear to be aimed at establishing a theory of specific jurisdiction.  But the fact that the Plaintiff is located in New Jersey does not confer jurisdiction over foreign defendants who did not engage in any conduct within New Jersey.  Because Plaintiffs attempt to assert both intentional torts and a claim sounding in negligence, the specific jurisdiction question requires two separate jurisdictional inquiries—one for each category of claims set forth in the Amended Complaint.  *See Frutta Bowls Franchising LLC v. Bitner*, No. 18-2446 (FLW), 2018 WL 6499760, at *3 (D.N.J. Dec. 10, 2018).

Count Two, for negligent misrepresentation, *see* Am. Compl. ¶¶ 102-110, is subject to "the standard formulation" of the minimum contacts test.  *See O'Connor*, 496 F.3d at 317 n.2.  On the other hand, Counts One and Three, for fraud and civil conspiracy respectively, arise from Defendants' alleged intentional tortious conduct.  *See* Am. Compl. ¶¶ 92-101, 111-19.  Because these torts were allegedly "directed at the plaintiff," they are analyzed under the *Calder* "effects" test to determine whether the conduct had "sufficient impact upon [Formation] in the forum" to satisfy the "minimum contacts prong of the Due Process test."  *IMO*

---

[10] Notably, Mandhana is also an Indian corporation based in Mumbai with no presence in the State of New Jersey.

*Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259-60 (3d Cir. 1998) (discussing *Calder v. Jones*, 465 U.S. 783 (1984)).   Formation can neither establish under the traditional minimum contacts test that this Court has specific jurisdiction over any of the Defendants for their alleged negligence, nor show under the *Calder* effects test that Defendants "expressly aimed" their alleged intentional tortious conduct at New Jersey.   Therefore, the Amended Complaint should be dismissed.

>      1.      <u>Defendants lack sufficient minimum contacts with New Jersey.</u>

For there to be specific jurisdiction over Defendants, Formation must establish that Defendants undertook "some act by which [they] purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Toys "R" Us, Inc.*, 318 F.3d at 451 (internal quotation omitted); *see also O'Connor*, 496 F.3d at 317 (internal quotation omitted).   Formation cannot meet this burden here.

In *Toys "R" Us*, the Third Circuit held that the defendant's website—which was accessible to New Jersey residents—coupled with the exchange of email correspondence between the parties was insufficient to show the defendant's conduct was "designed or intended to reach customers in New Jersey."   318 F.3d at 454-55.   The appellate panel reasoned that "telephone communication or mail sent by a defendant [do] not trigger personal jurisdiction if they do not show purposeful availment."   *Id.* at 455 (citing *Barrett v. Catacombs Press*, 44 F. Supp. 2d 717, 729

(E.D. Pa. 1999)).  In other words, while phone calls and emails could form part of the "something more" needed to establish personal jurisdiction, they are insufficient on their own to satisfy "the level of purposeful targeting required under the minimum contacts analysis." *Barrett*, 44 F. Supp. at 725, 729.

Here, Formation cannot establish that the Banks or Mandhana purposefully directed their activities at New Jersey.  The Resolution Professional prepared and shared in good faith a data room from India, to which Defendants uploaded "more than 1,000 documents" detailing "the company's financials, operations, and management."  Am. Compl. ¶ 44.  Interested resolution applicants—most of whom were also in India—could gain access to the materials to prepare a Resolution Plan on an "*as is where is*" basis.  Like the defendant's website in *Toys "R" Us*, which was capable of attracting internet users from all over the world, the data room served as a virtual platform where interested parties—two of whom were from Mumbai and one from New Jersey—could retrieve information available on Mandhana, including its financial statements.  Plaintiff does not allege—nor can it—that the Banks ever sent Mandhana's financials or any other information directly to any entity in New Jersey.  Indeed, the act of uploading the materials to the data room was not designed to target New Jersey residents at large, and the Banks did not purposefully avail themselves of any effort to conduct activity in New Jersey by doing so.

In addition to its allegations about the data room, Formation alleges that it participated in several phone calls and videoconferences from New Jersey with representatives from EY, the Banks, and Mandhana—all of whom were in India at the time of the calls.  None of these interactions on their own are sufficient to satisfy "the level of purposeful targeting required under the minimum contacts analysis" because Formation cannot establish that the Banks or Mandhana were deliberately targeting New Jersey.  *Barrett*, 44 F. Supp. at 729.

### 2.   Formation's claims are not related to any activity in the forum.

Even if Plaintiff could identify some purposeful contact with the forum, which it cannot, it must further establish that Formation's claims "also arise out of or relate to at least one of those contacts."  *O'Connor*, 496 F.3d at 318 (internal quotation omitted); *see also Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017) ("[T]o exercise specific jurisdiction, the *suit* must aris[e] out of or relat[e] to the defendant's contacts with the *forum*.").  In other words, "[i]n order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place *in the forum State*.'"  *Bristol-Myers*, 137 S. Ct. at 1781 (emphasis added) (quoting *Goodyear*, 564 U.S. at 919); *see also HS Real Co., LLC v. Sher*, 526 F. App'x 203, 206-07 (3d Cir. 2013) (finding that plaintiff's claim for fiduciary breach due to defendant's failure to disclose material

24

information about a transaction did not arise out of defendant's in-forum meeting in New Jersey because defendant failed to disclose the information at numerous meetings outside of the forum throughout the parties' relationship).[11]

Formation alleges that the Banks "had a duty to disclose . . . the true state of Mandhana's financial condition."  Am. Compl. ¶ 104.  But any knowledge about the "the true state" of Mandhana's financial condition would have already been acquired by the Banks *in India* prior to any contact with Formation in New Jersey. Likewise, the supposed breach of the Banks' duty to disclose, which was not within the power of the Banks per the applicable law in India, occurred when they allegedly withheld damaging information about Mandhana's liabilities from the upload to the data room and the resulting telephone meetings *from India*—not New Jersey.   In  sum,  the  factual  support  for  Formation's  *entire*  negligent

---

[11]  In *Carteret Saving Bank, FA v. Shushan*, the Third Circuit approved the exercise of specific jurisdiction based on phone calls and correspondence, plus a single in-forum meeting.  954 F.2d 141, 149 (3d Cir.1992).  Unlike in *HS Real*, where the plaintiff could not establish that the failure to disclose took place during the in-forum meeting, the plaintiff in *Carteret* alleged that a specific fraud took place at the New Jersey meeting.  *Id.* at 143.

misrepresentation claim is not tethered to any "activity" or "occurrence that [took] place in the forum State."[12]  *See Bristol-Myers*, 137 S. Ct. at 1781.

3.   <u>Plaintiff's allegations fail the *Calder* effects test because they cannot establish that the Bank Defendants "expressly aimed" any tortious conduct at New Jersey.</u>

Formation alleges that this Court has personal jurisdiction over the Banks and Mandhana because of their alleged "tortious acts" directed "toward the State of New Jersey."  Am. Compl. ¶ 27.  However, this conclusory allegation fails to satisfy the *Calder* "effects test," which requires that Formation show that the Banks and Mandhana "expressly aimed [their] tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity."[13]  *See IMO Indus.*, 155 F.3d at 265-66.  To "expressly aim" tortious conduct at the forum, Defendants must have known "that the 'brunt' of the injury caused by their tortious acts would be felt by the plaintiff in the forum."  *See id.* at 261; *see also Marten v. Godwin*, 499 F.3d 290, 299 (3d Cir. 2007) (court lacked specific jurisdiction over

[12]  The relatedness between Mandhana's alleged failure to disclose its true financial position and its contacts with the forum State is even more attenuated. Mandhana's only alleged contact with New Jersey is one phone call between Formation's Managing Principal from New Jersey and the company's corporate secretary in India.  Am. Compl. ¶¶ 42, 60.

[13]  In addition to the "expressly aimed" prong of the *Calder* test, a plaintiff is also required to show that the defendant committed an intentional tort and that the plaintiff felt the brunt of the harm in the forum.  *IMO Indus.*, 155 F.3d at 265.  For the purposes of this analysis, the Banks and Mandhana limit their discussion to the "expressly aimed" prong because it is dispositive.  However, Defendants do not concede the accuracy of Formation's allegations regarding the additional prongs of the *Calder* "effects test."

defendants for defamation and retaliation claim because Formation merely alleged that defendants "harmed him while he happened to be residing in Pennsylvania"); *Theorem, Inc. v. Citrusbyte, LLC*, No. 19-13423, 2019 WL 3812474, at *3 (D.N.J. Aug. 14, 2019) ("[T]he plaintiff must . . . *point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum*.") (internal quotation omitted) (emphasis in original).

Apart from the boilerplate, conclusory language Formation uses at Paragraph 27 of the Amended Complaint in a transparent attempt to establish jurisdiction over the Defendants where there is none—"directing tortious acts toward the State of New Jersey"—Formation does not point to any specific activity to suggest the Banks or Mandhana expressly aimed their alleged tortious conduct at New Jersey. The allegations in Paragraphs 59 through 63 regarding the telephone calls and videoconferences between Formation and representatives of the Banks and EY also fall far short of what is required under the "expressly aimed" prong of the *Calder* effects test. Formation does not, and cannot, allege that the Banks or Mandhana intended Formation to suffer "the brunt of the injury caused by their tortious acts" in the State of New Jersey because "there is no indication that [New Jersey] had anything but a fortuitous role in the parties' past dealing or would have any role in their continuing relationship." *IMO Indus.*, 155 F.3d at 261-62 (internal quotation omitted). The Amended Complaint demonstrates that

27

Formation simply happened to be a New Jersey-based company that voluntarily reached out to participate in the Indian corporate insolvency resolution process involving Mandhana in response to an invitation for expression of interest published in India for resolution plans for Mandhana. "There is thus no evidence that [the Bank] [D]efendants' alleged torts had any connection to [New Jersey] beyond [Formation's] corporate domicile."[14]   *Id.* at 262 (internal quotation omitted).

4.   <u>Without any sufficient minimum contacts, this Court's exercise of jurisdiction would not comport with Due Process.</u>

Formation's Amended Complaint fails to demonstrate that the Banks or Mandhana have minimum contacts with New Jersey. However, even if Formation were able to allege sufficient minimum contacts, this Court's "exercise of jurisdiction" over Defendants would not "otherwise comport with traditional notions of fair play and substantial justice." *See O'Connor*, 496 F.3d at 324. The burden on the Banks and Mandhana in this matter would be severe and unjustified, especially since no minimum contacts have been established. *See Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal.*, 480 U.S. 102, 114 (1987). Not only would

---

[14]   The manner in which the Banks and the Resolution Professional invited potential resolution applicants to submit bids demonstrates that Defendants were not deliberately targeting New Jersey. *See* Sinha Certif., Ex. A ¶ 6.3 (the RP "issued newspaper ads inviting Expressions of Interest from prospective resolution applicants for submission of resolution plans for [Mandhana]"). The RP received interest from two Mumbai-based companies and only one company from New Jersey—Formation.

Mandhana and the Banks be forced to travel the significant distance between India and New Jersey to litigate a dispute over an Indian business asset, but they would also be required to face "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system." *Id.* Those burdens "should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders," especially when it is not clear at this point whether New Jersey law would even apply to the merits of Formation's substantive claims. *Id.* at 114. Furthermore, this Court should "consider the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction by the [New Jersey] court." *Id.* at 115. Asserting personal jurisdiction here could conflict with the Indian bankruptcy proceedings in the NCLT, and could also establish two competing parallel litigations involving the same legal issues already pending adjudication before the Indian court, *i.e.*, NCLT. For these reasons, the Amended Complaint should be dismissed pursuant to Rule 12(b)(2).

## III. The Amended Complaint Must Be Dismissed Under Rule 12(b)(3) for Improper Venue.

The Court should dismiss this action pursuant to Fed. R. Civ. P. 12(b)(3) for the additional reason that venue is improper in the District of New Jersey. "A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of

29

property that is the subject of the action is situated[.]"  28 U.S.C. § 1391(b)(2).

Here, despite Formation alleging otherwise, Am. Compl. ¶ 28, a substantial part of

the events or omissions giving rise to Formation's claim did not occur in this

district.[15]  *See e.g.*, *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 161 (3d

Cir. 2012) (internal citation omitted) (affirming dismissal of complaint for

improper venue where defendant submitted evidence that "all of the allegedly

wrongful behavior took place in Colorado, where the Corporations held all of their

board meetings" and not in Pennsylvania); *Al-Ghena Int'l Corp. v. Radwan*, 957 F.

Supp. 2d 511, 524 (D.N.J. 2013) (finding that the District of New Jersey was not

the proper venue because defendants alleged misrepresentations did not originate

in New Jersey and did not cause substantial effects in New Jersey).

Indeed, the majority of Formation's allegations relate to the financial status

of Mandhana, an Indian company located and doing business in Mumbai.

Formation alleges that "Mandhana's former executives had carried out a stunning

multi-year fraud and money-laundering scheme."  Am. Compl. ¶ 1.  None of that

alleged scheme, though, took place in New Jersey.  The independent forensic audit

that the Banks and EY ordered once they discovered Mandhana's alleged

---

[15]  Formation also contends that venue is proper in New Jersey under 28 U.S.C. § 1391(b)(3) because the Defendants are subject to this Court's personal jurisdiction. Am. Compl. ¶ 28.  As discussed in Section II, *infra*, Formation fails to allege sufficient jurisdictional facts for this Court to assert personal jurisdiction over the Banks and Mandhana.

fraudulent activity—a key document at the center of Formation's assertion that Defendants fraudulently induced Formation into purchasing Mandhana—was commissioned and performed solely in India. And, none of the conduct involving Mandhana's tax liabilities took part in New Jersey. Formation even acknowledges by its own pleading that Mandhana's "outstanding tax liabilities" were incurred by the company under India's "Central Sales Tax Act" and were enforced by "India's Department of Goods and Services." Am. Compl. ¶ 83.

Even the basis for Count Three of the Amended Complaint—the alleged civil conspiracy designed "to defraud [Formation] into buying Mandhana"—was "hatched" by the Defendants in India. *Id.* ¶¶ 4, 68, 113 ("But EY and the Banks intentionally hid the forensic audit and its findings from Formation—just as Mandhana had hid the truth about the company's performance—all while touting Mandhana's financials in diligence calls and videoconferences with Formation."). Notably, Formation alleges that all of the diligence calls and videoconferences were conducted by the Defendants from India, and correspondence, telephone calls, and even "impact of economic harm" is "woefully insufficient to establish venue in this district." *See Loeb v. Bank of Am.*, 254 F. Supp. 2d 581, 587 (E.D. Pa. 2003).

Essentially, the only ties to the District of New Jersey are Formation's corporate domiciliary and Formation's downloading of Mandhana's financial

statements made available to it through the virtual data room.  Formation alleges those materials were fraudulent, but Defendants' supposed misrepresentations and omissions were all allegedly made in India and then made available in New Jersey, alongside other prospective resolution applicants based in India, through the data room.  That conduct is not enough to establish venue in this district as the alleged misrepresentations did not originate in New Jersey.  *See Al-Ghena Int'l Corp.*, 957 F. Supp. 2d at 524.  Thus, Formation's Amended Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(3) because venue is improper in the District of New Jersey.

## IV.   The Amended Complaint Should Be Dismissed on *Forum Non Conveniens* Grounds.

In addition to the jurisdiction and venue deficiencies, the Court should also dismiss this matter on *forum non conveniens* grounds.  In evaluating a motion to dismiss on this basis, courts apply a three-step analysis to determine:  (1) whether an adequate alternative forum can entertain the case; (2) the appropriate amount of deference to be given the plaintiff's choice of forum; and (3) the balance of the relevant private and public interest factors.  *Hegrenes v. Nilsen*, No. 16-2271, 2016 WL 3457219, at *2 (D.N.J. June 24, 2016).

Here, the Mumbai bench of the NCLT is an adequate alternative forum capable of entertaining the issues raised in Formation's Amended Complaint.  It

32

was the NCLT that admitted Mandhana into insolvency by ordering commencement of insolvency proceedings pursuant to its September 29, 2017 order—the same proceedings in which Formation voluntarily reached out to the Banks through the Resolution Professional for the first time with a bid to acquire Mandhana. Further, it is the NCLT that is vested with jurisdictional and adjudicatory powers concerning all matters arising from or in relation to the insolvency proceedings under the applicable law in India, including any dispute arising out of the bid/resolution plan submission process. Moreover, Formation has already filed a Miscellaneous Application ("MA") which is currently pending before the NCLT that raises the same issues on the same set of facts against the same parties seeking the same relief. *See* Sinha Certif., Ex. A. Clearly, the Banks and Mandhana can demonstrate that the subject matter of this action—the alleged fraud and misrepresentation involving Mandhana's sale to Formation—is "cognizable in the alternative forum in order to provide [Formation's] appropriate redress." *See Kultur Int'l Films Ltd. v. Covent Garden Pioneer, FSP., Ltd.*, 860 F. Supp. 1055, 1063 (D.N.J. 1994).

With respect to the second step, ordinarily, "there is a strong presumption in favor of a plaintiff's chosen forum," but that "may be overcome when the balance of the public and private interests clearly favor an alternate forum." *Micklos v. Certify Global, Inc.*, No. 3:18-cv-14781, 2019 WL 2265343, at *4 (D.N.J. May 28,

33

2019) (internal citations omitted).  Notably, "if the operative facts giving rise to the complaint occurred outside of the chosen forum, then deference owed to a plaintiff's choice of forum is reduced."  *Id.*  The plaintiff in *Micklos*—a New Jersey resident—was "entitled to some deference since it chose New Jersey as its forum," but the court declined to award full deference to the choice of forum because "most of the facts giving rise to the Complaint occurred in Maryland."  *Id.*

The same reasoning applies here.  While Formation is a New Jersey-based corporation, this Court should not grant full deference to its choice of forum because almost all of the facts giving rise to the Amended Complaint occurred in the Republic of India.  Moreover, as explained above, Formation chose to participate in Mandhana's CIRP, which is governed by the Code.  It elected to submit a resolution plan, and, by doing so, agreed to resolve any disputes in the Indian courts.  When disputes arose, Formation filed applications with the NCLT seeking relief.  Accordingly, its decision to now choose New Jersey as an alternative forum to litigate the same claims that are pending in the NCLT should not be afforded deference.

Third, Defendants can demonstrate that the public and private interest factors weigh in their favor. *See Micklos*, 2019 WL 2265343 at *4. Public interest factors include:  "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the

34

avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (4) the unfairness of burdening citizens in an unrelated forum with jury duty." *Id.* Here, the public interest factors tip decidedly in favor of Defendants. As noted above, Formation has already filed MA No. 2223/2019 before the NCLT—it would be more efficient for the claims to be adjudicated in that forum because the NCLT is already familiar with Mandhana's CIRP and the parties. There is a strong local interest in India's NCLT adjudicating the insolvency proceedings of one of its own corporations. All parties have agreed to resolve any disputes arising from the CIRP in the NCLT, so there could be a potential dispute in federal court as to what law would apply. And, it would also be burdensome on a New Jersey-based jury to review evidence from an unrelated, foreign forum.

The private interest factors also weigh in favor of Defendants. Private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; and (4) practical considerations that make trial of a case easy, expeditious, and inexpensive." *Micklos*, 2019 WL 2265343 at *5. Since almost all of the alleged conduct supporting the Amended Complaint took place in India, moving forward with the litigation in Mumbai makes the most practical sense. The NCLT would have better access to sources of

proof and a stronger ability to compel witness attendance. The Resolution Professional, for example, who was appointed by the COC to carry out Mandhana's CIRP, which included inviting prospective resolution applicants to submit resolution plans and managing the operations of Mandhana as a going concern until it was acquired by a successful resolution applicant (Formation in this case), has a Mumbai address. *See* Sinha Certif., Ex. D. Her presence at any hearing would be critical. And, while it would be burdensome on Formation's Managing Principal to travel from New Jersey to Mumbai for the proceedings, he has shown a willingness to make that same trip. He made himself "available in India from December 9, 2018 until January 5, 2019" on behalf of Formation when the company was "taking over management and control of [Mandhana] in accordance with the RP and the NCLT Order." Sinha Certif., Ex. A ¶ 6.14. Thus, the private interest factors, as well as the public interest ones, support dismissal of the Amended Complaint on *forum non conveniens* grounds.

## V. Alternatively, this Court Should Defer to the Pending Indian Proceedings Under the Principle of International Comity.

The pending Indian insolvency proceedings, already underway before the Mumbai bench of India's NCLT since September 2017, warrant dismissal of this action under the principle of international comity. "Under the principle of comity between sovereign nations, a district court should decline to exercise jurisdiction

under certain circumstances in deference to the laws and interests of another foreign country." *Paraschos v. YBM Magnex Int'l, Inc.*, 130 F. Supp. 2d 642, 645 (E.D. Pa. 2000). "The rationale for dismissals based on comity is . . . in deference to the foreign country's legal, judicial, legislative, and administrative system of handling disputes over which it has jurisdiction, in a spirit of international cooperation." *Id.* (citing *Cornfeld v. Invs. Overseas Servs. Ltd.*, 471 F. Supp. 1255, 1262 (E.D.N.Y. 1979)). The Third Circuit has stated that "[c]omity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect." *Phila. Gear Corp.*, 44 F.3d at 191 (internal citation omitted).

Here, this Court should decline to exercise jurisdiction over this case because the interests of India and its court system, the procedures and comprehensive laws the country has in place (including the Code) to handle an insolvent Indian corporation, and the interests of some of India's largest banks, all outweigh any interest that the United States would have in adjudicating this matter. First, India has a significant national interest in resolving Mandhana's insolvency proceedings, primarily because Mandhana is an Indian corporation that carries on its textile business in Mumbai. India has a system of laws in place—the Indian Insolvency and Bankruptcy Code—and a tribunal—the NCLT—which approved

Mandhana's resolution plan once the Banks brought the distressed company into insolvency.  Sinha Certif., Ex. C ¶ 21.

Even though it is a New Jersey-based corporation, Formation elected to acquire and undertake business in a foreign country when it chose to submit a resolution plan to the Mandhana RP.  More importantly, Formation knew, by accepting unconditionally the terms of the Letter of Intent and by reviewing the Process Memorandum, that it would be required to resolve any disputes in the Mumbai court system.  Sinha Certif., Ex. E at 4; *id*. Ex. D ¶ 19.  This Court should show "deference to [India's] legal . . . system of handling disputes over which it has jurisdiction" and honor and enforce those choice of law provisions that all of the parties to the CIRP unequivocally agreed to.[16]  *See Paraschos*, 130 F. Supp. 2d at 645.

Furthermore, dismissal of this action under the principle of international comity would not cause any prejudice toward Formation, nor would it be contrary to U.S. interests, because Formation's claims of fraud and misrepresentation in this action are mirror images of what it alleged in front of the NCLT.  Indeed, Formation alleged in its filing to the NCLT that the Banks "deliberately,

---

[16]  Deferring to the agreed upon choice of law provisions in the Letter of Intent and the Process Memorandum would not only engender a "spirit of international cooperation," *Paraschos*, 130 F. Supp. 2d at 645, but would also prevent Formation from using a U.S. federal court to forum shop.

fraudulently and willfully suppressed material facts and information from [Formation] including facts and information pertaining to . . . [the] true and correct financial position of [Mandhana.]"  Sinha Certif., Ex. A at ¶ 5.2; *compare with* Am. Compl. ¶ 93 ("Defendants knowingly, and with intent to defraud, made material misrepresentations and omissions of material facts to Formation regarding Mandhana's financial condition.").  Formation even seeks the same relief in this Court that it asked for in the pending matter before the Mumbai NCLT.  There, Formation asked the NCLT to order the RP and the COC "to refund the sum" it spent "towards implementation of the resolution plan."  Sinha Certif., Ex. B at 41. The pending matter before the NCLT ensures that the substantive merits of Formation's claims will be heard.  Thus, extending comity to the pending proceedings in the NCLT would not be contrary to the public policy of the United States, nor would dismissal of this action prejudice Formation.

## **CONCLUSION**

For all the foregoing reasons, Defendants respectfully request that this Court grant this Motion and dismiss the Amended Complaint in its entirety and with prejudice.

Date:  November 19, 2020   Respectfully submitted,

         *s/ Stephen A. Loney, Jr.*
         HOGAN LOVELLS US LLP
         Stephen A. Loney, Jr. (NJ. No. 005172006)
         stephen.loney@hoganlovells.com
         Jessica K. Jacobs (NJ No. 038002011)
         jessica.jacobs@hoganlovells.com
         Jason M. Russell (NJ No. 294212019)
         jason.russell@hoganlovells.com
         1735 Market Street, 23rd Floor
         Philadelphia, PA 19103
         Tel: (267) 675-4600
         Fax: (267) 675-4601

         *Attorneys for Defendants Bank of Baroda,*
         *Bank of India and State Bank of India,*